Olin Wofford

*v.*

State of Tennessee.

358 S.W.2d 302.

(*Knoxville,* September Term, 1961.)

(May Session, 1962.)

Opinion filed June 5, 1962.

268

Douglas Amick, Newport, for plaintiff in error.

George F. McCanless, Attorney General, Lyle Reid, Assistant Attorney General, Nashville, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Wofford was indicted on a two count indictment, charging (1) forgery and (2) uttering a forged check. He was found guilty under the second count and sentenced to three (3) years in the State penitentiary, from which judgment he has perfected an appeal, filed briefs and able argument have been heard. After reading the record, briefs and making an independent investigation we have the questions presented for disposition.

Wofford was born, raised and lived in South Carolina, but in March, 1961, he and his family moved to Cocke County, Tennessee.

After Wofford came to this State he made an application to the South Carolina Employment Security Commission for unemployment compensation. This compensation was allowed him, and it was determined that he was entitled to receive a total of $572.00, payable at the rate of $26.00 per week. Two employment security officials from South Carolina testified that Wofford was advised of the total amount to which he was entitled and the rate at which he would receive it. Wofford denied that he ever received such information. The record shows though that each week for nineteen weeks prior to March 15, 1961, Wofford received a check for $26.00.

On March 16, 1961, the check in question was prepared by the Security Office of South Carolina for $26.00 on a

machine which according to the proof would not write a check for more than $999.99. The amount payable was written on the face of the check in figures in two places but was not written in words. The check in the regular course of office procedure was deposited in the U. S. Mail addressed to Wofford.

On March 17, 1961, Wofford received the check through the mail. He stated that he did not open the envelope containing the check until the next day when he took it to a neighborhood store to get it cashed. At the store the envelope containing the check was opened in the presence of two or three witnesses who saw the check and observed that it was in the amount of $1,126.00. The check being too large for a small store to cash, it was taken to the county seat of Newport where Wofford endorsed it and cashed it at a bank in Newport. At the suggestion of an official of the bank he deposited $500.00 in a checking account and received the balance of $626.00 in cash. When the check was forwarded for collection it was not honored and was returned to the Newport bank, which apparently sustained the loss of $626.00.

The next day after Wofford had cashed this check he gave his wife $200.00 who was sick, and he then went to Memphis to look for work. A few days later he was advised by his wife that the Sheriff was looking for him. He then returned to Cocke County and surrendered to the Sheriff.

The questions presented primarily contend that the evidence preponderates in favor of Wofford's innocence and against his guilt. He, as heretofore said, was acquitted of the forgery count but was convicted on the

count of uttering a forged instrument under sec. 39-1704, T.C.A. This statute provides:

"Any person who fraudulently passes or transfers, or offers to pass or transfer, any forged paper, knowing it to be forged, with intent to defraud another, is guilty of a felony."

This Court had this statute under consideration in *Girdley v. State*, 161 Tenn. 177, 29 S.W.2d 255. In this case the Court said:

"The forging of a particular check is a single criminal act, regardless of how many forged signatures appear thereupon, or how many persons the forged instrument might defraud. * * * So the offer to pass such an instrument is a single criminal act."

This same authority holds that an indictment based upon the statute above quoted "describes an offense, equivalent to the common-law offense of uttering forged paper", citing as authority for the statement, *Abston v. State*, 134 Tenn. 604, 185 S.W. 706. A reading of this case shows that it clearly supports this holding.

In Vol. 2, sec. 648, page 437, Wharton's Criminal Law and Procedure, Anderson, it is very correctly said that:

"Uttering a forged instrument consists in offering to another the forged instrument with a knowledge of the falsity of the writing and with intent to defraud. Uttering is an offense at common law."

It is noted thus that the elements of this crime are (1) actual knowledge that the instrument is false; (2) representation, either direct or implied, that the instrument is genuine; and (3) the intent to defraud. See 37

C.J.S. Forgery sec. 37. Thus it is seen that one of the elements of this crime is whether or not the person who passes this check has actual knowledge that the instrument is false. In determining this question it is argued here very forcibly that since Wofford states that he had no knowledge that the instrument was forged and since the verdict was returned in his favor as to the forgery, that he cannot be convicted under this count in the indictment. In Wharton's Criminal Evidence, Anderson, Vol. 1, sec. 131, page 246, this very reasonable statement is made, to-wit:

"The question is complicated by the fact that knowledge, like intent, is a state of mind, generally to be inferred from the person's conduct viewed in the light of all the accompanying circumstances."

██ In other words the question of whether or not the plaintiff in error had actual knowledge of the falsity of the instrument is a fact question which may be determined by the jury from circumstantial evidence under all the facts in the case.

"The question of guilty knowledge, and whether there was an intent to defraud, are questions for the jury to decide under the circumstances. And the proof of this fact may be made by circumstantial, as well as direct, testimony." Taylor v. State, 65 Okl. Cr. 432, 88 P.2d 665.

The Oklahoma Court cites authority for this statement, and, in view of our investigation of the matter, we are satisfied that this is a correct determination of the question.

Is there evidence in this record from which the jury could conclude that the plaintiff in error had this knowl-

edge, made the representation that the instrument was genuine, and that he intended to defraud the person from whom he secured the money on the check?

■■ We think this question must be answered in the affirmative. It was shown in the evidence, as heretofore indicated, that it was mechanically impossible for the machine upon which the check was written to write a check in the amount or in the number of digits which were on this check. An examination of the check which was offered in evidence indicates that it had been tampered with. The spaces on the check in which the amount was to be stated obviously were designed for a maximum of five digits only. Two ones on the right center, and particularly the second one, appeared to be blurred as would be expected if some erasure had been made before these numbers were written. The jury could have found that the figures designating the amount appeared to have been inked over, probably so that there would be no disparity in the color of the ink. Under these things clearly the jury was justified in finding that the check was forged, but there being no evidence that Wofford did the forgery, they did not convict him of forgery, but of uttering what clearly was a forged instrument, because he had received all these other checks in the amount of $26.00, and there was evidence to show that he was not entitled as a maximum to more than half the amount of this check in the outset. It is true that he denied that he knew this fact, but the question of the credibilty of the witnesses is for the jury and the trier of facts. Credibility really means that the witness has told a story which meets the test of plausibility and is therefore credible.

■ The mere offering of a check by Wofford for payment constitutes representation that it was genuine.

*Girdley v. State,* supra. A showing that he was in possession of this forged instrument and claiming an interest in it, if unexplained, raises a conclusive presumption that he forged it or procured it to be forged, thus satisfying the requirements of knowledge of forgery and intent to defraud. *McGhee v. State,* 183 Tenn. 20, 189 S.W.2d 826, 164 A.L.R. 617. Wofford's only explanation was that the check was for the larger amount when he received it through the mail. Whether this explanation is sufficient to remove the presumption of guilt is a question for the jury. *McGhee v. State,* supra.

From what we have said above, we are satisfied that the evidence does not preponderate in favor of Wofford's innocence and against his guilt.

██ Other assignments are made, which in our judgment do not merit a reversal or constitute error. One of these is that one of the jurors was biased or prejudiced and that he had been accepted without revealing this bias. There is nothing in the record to support this assignment. Another is that the court erred in allowing, over the objection of the plaintiff in error, a witness for the State to testify as to the amount due Wofford without first testifying that he conveyed this knowledge to the plaintiff in error. This is not error for the simple reason that it is a statement of fact by an employment officer as to the amount Wofford was to get and is clearly supported by other evidence to the same effect. Another assignment is to the same effect as to the evidence of another witness. Another assignment is that it was error for the court to allow the State to introduce an exhibit showing the total amounts that were due Wofford and the amounts that he had been paid. Clearly, this is not error

because it is necessary to show this as a matter of fact before it could be shown that the check was out of bounds. Lastly, it is said that there is no evidence that Wofford had knowledge that the check was in an amount greater than that due him. Of course, this question was answered by our discussion heretofore as to the amount he received, the amount he had been receiving, and those things, which are all fact questions for consideration by the jury.

After a thorough consideration of the entire matter, we are satisfied that there has been no error committed herein, and the judgment below must be affirmed.